BUCK STOVE COMPANY *v.* JOHN JOHNSON *et al.*

PARTNERSHIP. *Firm assets. Subrogation.* Johnson and Risk were partners. Johnson sold to Risk his interest. By the agreement of dissolution and sale, Risk agreed to assume all the liabilities of the firm, and gives a lien on all the partnership effects to secure Johnson in the purchase money and to indemnify him against creditors of the firm. Johnson conveys to an individual creditor "all his interest which may be coming to him from said firm." The partners becoming insolvent, the creditors of the firm file this bill. *Held:* The con-

Buck Stove Co. *v.* Johnson.

veyance by Johnson was fraudulent in law. The partnership property being liable for partnership debts, by the dissolution and terms of sale and the sale by one partner to the other, kept the firm property impounded with its liability to firm debts. The creditors, by subrogation, are entitled to the lien given to Johnson by the agreement of sale.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

W. W. GOODWIN for complainant.

W. M. RANDOLPH and J. M. GREGORY for def'ts.

TURNEY, J., delivered the opinion of the court.

John Johnson and E. F. Risk were partners doing business in the city of Memphis. On the 26th of September, 1876, complainant recovered a judgment against them for $4,933.26. Execution issued, and was returned *nulla bona*.

After suit brought and before judgment, and on the 1st of February, 1875, Risk and Johnson dissolved, Johnson selling out to Risk. It is provided in the terms of sale: "Risk assumes payment of each and all the debts and liabilities of every kind whatever of each and both of said firms, and obligates himself to pay the same, and protect and keep said Johnson harmless from the payment of any part thereof. The bills receivable, book accounts, and all debts of every kind payable or belonging to said firm, whether due or not due, remain and continue the joint prop-

erty of the two parties, John Johnson and E. T. Risk, but said Risk takes charge of the collections, and is to collect said debts as fast as possible for distribution between the two, without charge therefor, except in such cases as he may have to employ lawyers or other persons," &c., &c. By the same instrument, Johnson conveys to Risk his undivided half of a lot in the city of Memphis, together with all tools, machinery and iron on said lot and in the foundry thereon, with the usual covenants. The contract then proceeds: "This instrument further witnesseth, that the firms of Johnson, Risk & Co., and Risk & Johnson, are this day dissolved, the said Johnson selling all his interest in the machinery, tools and stock of every kind on hand belonging to both firms to the said E. T. Risk, and part of the consideration of said sale and the above conveyance is, that the said Risk assumes payment of each and all the debts and liabilities, of every kind whatever, of each and both of said firms, and binds and obligates himself to pay the same, and protect and keep said Johnson harmless from the payment of any part thereof." * * "Said Johnson, by agreement, hereby retains a lien upon the real estate and machinery herein above conveyed, and said Risk grants and acknowledges the same, together with a lien, equal to and like a mortgage, upon his other undivided half of said foundry property, both land and machinery, to secure to Johnson the faithful performance of the undertakings herein made by the said Risk, which are, that he will pay over to said Johnson, &c., * * and pay all the debts outstand-

ing owing by the said two firms or either of them. In the event that Johnson should have to pay any of such debts, or be sued thereon, &c., * * then he may forthwith proceed to enforce the liens herein retained and granted, by proper proceedings therefor."

In June, 1875, Johnson conveyed "all" his "right, title and interest of every kind which belongs or may be coming to me as a member of the late firms of Johnson, Risk & Co., and Risk & Johnson, under and by virtue of the agreement and articles of dissolution," &c., to secure his individual debt.

This bill is filed against several defendants. We need only notice Frank & Co., whose demurrer was sustained by the chancellor.

It is a well established rule that partnership property is first liable to partnership debts. The terms of the dissolution of the firms, and the sale by one partner to the other, kept the firm property impressed with its liability to firm debts. They undertook by it to indemnify the retiring partner against loss on account of partnership debts, and although the language gives the lien and mortgage for the security of the retiring member, still, both being insolvent, as the bill charges, the creditors, whose debts are indemnified against in the interest of one partner, may be subrogated to his rights under the deed of sale and dissolution. Until Risk had discharged his obligation to pay debts, he could only convey subject to the liens and incumbrances imposed on his title. So long as there were partnership debts, any conveyance by Johnson of his interest in the lien or mortgaged property

for the payment of individual debts, would be like-
wise incumbered. The conveyance of it under the
circumstances portrayed in the bill, would be fraudu-
lent in law if not in fact.

· Decree reversed and cause remanded.